

**FILED**

June 04, 2021
ST-2020-CR-00275
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) | CASE NO. ST-2020-CR-00275 |
| | ) | |
| Plaintiff, | ) | 14 V.I.C. § 297(a)(2) |
| vs. | ) | 14 V.I.C. § 2253(a) (2 Counts) |
| | ) | 23 V.I.C. § 479(a) |
| SHEKIL BERTHIER, | ) | 14 V.I.C. § 2256(a) |
| | ) | 14 V.I.C. § 1384(a) |
| Defendant. | ) | |

Cite as: 2021 VI Super 58U

**MEMORANDUM OPINION**

¶1 Pending before the Court are:

1. Defendant's Motion To Modify Release Conditions And Motion for Hearing, which was filed on May 4, 2021;

2. People's Opposition To The Defendant's Motion To Modify Release Conditions And Motion for Hearing, which was filed on May 21, 2021; and

3. Defendant's Reply To The People's Opposition To The Defendant's Motion To Modify Release Conditions And Motion For Hearing, which was filed on May 24, 2021.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

¶2 On Sunday, May 31, 2020, at about 2:50 p.m., Kyan J. Crooke presented himself at the Virgin Islands Police Department's Criminal Investigation Bureau to report that earlier in the day, he had received multiple threatening text messages to his cellphone from an unknown sender. The text messages were received at 7:48 a.m. and 12:13 p.m.

¶3 Crooke also reported that at about 2:00 p.m., he and his mother were at his residence located at 2A Frydenhoj, St. Thomas, when he heard multiple shots being fired outside the residence. Crooke then looked out of a window and saw two black men outside standing in his driveway. Crooke provided the police with a physical description of both men.

¶4 Crooke recognized one of the men known to him as "Shaq" who lived in the neighborhood. As Crooke continued to look out the window, he saw that Shaq had a gun in his hand and that he fired a shot at Crooke's residence. The second man and Shaq then ran from the driveway and down the hill. He saw them jump into a maroon colored car, driven by a third black male, and drive away.

¶5 Crooke called 911. While waiting for VIPD to arrive, Crooke observed damage to one of the windows of his house, a bullet hole in the wall of his residence and damage to his mother's vehicle.

This evidence was photographed by the VIPD Forensics Unit.

¶6 Later, Crooke viewed a photo array consisting of 6 photographs of similar looking individuals and identified Shekil Berthier in Photo 3 as Shaq, immediately and without hesitation.

¶7 Following the issuance of a warrant, Berthier was arrested on September 25, 2020, and subsequently charged with Third Degree Assault in violation of 14 V.I.C. § 297(a)(2); Unauthorized Possession of an Unlicensed Firearm During the Commission of a Third Degree Assault in violation of 14 V.I.C. § 2253(a); Discharging a Firearm in violation of Title 23 V.I.C. § 479(a); Unauthorized Possession of a Firearm During the Commission of an Illegal Discharge of a Firearm in violation of 14 V.I.C. § 2253(a); Unauthorized Possession of Firearm Ammunition in violation of 14 V.I.C. § 2256(a); and Damaging a Vehicle in violation of Title 14 V.I.C. § 1384(a).

¶8 Berthier's advice of rights hearing was conducted on September 28, 2020, during which his bail was set at $50,000.00 with one or more sureties or deposit of cash in lieu thereof, with no security of 10% permitted. Other non-monetary conditions were set including house arrest and electronic monitoring.

¶9 Mr. Michel Charles posted his real property, Parcel No. 2-4 Estate Mariendahl, St. Thomas, U. S. Virgin Islands, as a property bond in lieu of $50,000.00 cash, and Berthier was released into the custody of his mother as third-party custodian. At his October 16, 2020 arraignment, the Magistrate Judge orally approved Berthier's uncle, Lindan Meyil[1], as third-party custodian in place of his mother.

¶10 Berthier's Motion came on for an evidentiary hearing on May 24, 2021. Charles testified that he has known Berthier for over 15 years. Charles is self-employed as an auto mechanic. His business is located at 2B-1 Mariendahl and he is willing to employ Berthier at his shop. Charles also testified that Berthier listens to his instructions.

## II. LEGAL STANDARD

¶11 Berthier now moves the Court to relieve him of the obligation to pay the costs associated with electronic monitoring and to allow him to work pending the resolution of this matter.

### A. V.I. R. Crim. P. 5-1

¶12 Section 34(a) of Title 4 of the Virgin Islands Code grants the Virgin Islands Supreme Court the power to promulgate rules governing the business of the court.[2] Effective December 1, 2017, the

---

[1] The Consent of Third Party Custodian spells Meyil's first name as "Lyndan". However, a photocopy of his attached V.I. Driver's License spells Meyil's first name as "Lindan" which is the spelling that will be used herein.

[2] V.I. CODE ANN. tit. 4, § 34(a) ("The Supreme Court may, from time to time, promulgate or amend general rules, or where it considers it best for the advancement of justice, may make special orders, provide for the conduct of the business of the Court, and regulate the practice and procedure governing causes and proceedings in the Court, provide

Supreme Court of the Virgin Islands promulgated the Virgin Islands Rules of Criminal Procedure[3] which modernized and effectively repealed former Superior Court Rules 141 through 147 on the setting of bail.[4] The Virgin Islands Rules of Criminal Procedure govern the procedure in all criminal proceedings in the Superior Court of the Virgin Islands except as otherwise stated in the Rules, or other rules promulgated by the Supreme Court of the Virgin Islands[5] and the Revised Organic Act. Bail is governed in the Virgin Islands Rule of Criminal Procedure 5-1.

Rule 5-1 provides the following forms of bail or release conditions:

**(a) Generally.** Subject to any specific statutory provisions, before conviction all persons shall be bailable on conditions approved by the court.

**(b) Forms of Bail or Release Conditions.** Excessive bail shall not be required. Except as otherwise provided by this Rule, there is a presumption in favor of release on nonmonetary conditions for any person who is granted pretrial release. The court shall impose the least restrictive of the following non-exhaustive range of conditions of release that will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process; or, if no single condition gives that assurance, shall impose any combination of the following conditions.

. . . .

**(3) Travel and/or Residence Restrictions.** Where appropriate, placement of restrictions on the travel, association, or place of abode of the defendant during the period of release;

. . . .

**(7) Additional bail.** As provided in 5 V.I.C. § 3506, when proof is made to the judge that a person previously admitted to bail on a criminal charge is about to abscond, and that bail is insufficient, the judge shall require such person to give better security, or, for default thereof, cause the person to be committed; and an order for the person's arrest may be indorsed on the former commitment, or a bench warrant therefor may be issued, setting forth the cause thereof. The bench warrant shall be issued by the clerk, upon direction of the judge.[6]

---

for the holding of regular and special sessions, fix the time of and otherwise regulate the return of process issued out of the Court, and fix the fees that shall be paid and the costs that shall be assessed in the Court. All such fees and costs shall be credited to the General Fund of the Treasury of the Virgin Islands.").

[3] Supreme Court of the Virgin Islands Promulgation Order No. 2017-010 dated December 19, 2017.

[4] *See* Note to V.I. R. CRIM. P. 5-1.

[5] V.I. R. CRIM. P. 1(c).

[6] V.I. R. CRIM. P. 5-1.

¶13    Determination of the proper bail amount must be conducted on a case-by-case basis.[7] The Court must "set out the reasons and findings it makes when issuing orders deciding bail and other release conditions."[8] Therefore, the Court must consider the particular facts before it determines whether a bail amount will reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process. "Ultimately, the determination of the conditions of release rests in the sound discretion of the trial judge."[9]

¶14    Further, a Motion for Pre-Trial Release is governed by Virgin Islands Rules of Criminal Procedure 46 and 32.1(a)(6). According to Rule 32.1(a)(6), "[t]he court may release or detain the person pending further proceedings[; and] [t]he burden of establishing by clear and convincing evidence that the person will not flee or pose danger to any other person or to the community rests with the person."[10]

### B. Electronic Monitoring and Payment

¶15    The Court has used electronic monitoring for years in numerous cases to ensure defendants appear. As stated in *People v. Saldana*:[11]

> In addition to utilizing this real property as the security for bail, the Court can set other conditions which it deems necessary to assure Defendant Saldana will attend all court appointments. These conditions include, but are not limited to, *house arrest with electronic monitoring*, reporting to the office of probation, restrictions on travel, and surrendering personal documents required for travel.[12]

¶16    In *Saldana*, the Court placed the defendant on a 24-hour house arrest with electronic monitoring and made him "responsible for timely tendering all fees for the same."[13] In *Virgin Islands v. Dowdye*,[14] the Court provided a list of additional release conditions, which included:

> (1) assignment of Muriel Weeks, the Defendant's Aunt, as a third party custodian; (2) requiring the Defendant to reside with the third party custodian; (3) implementation of electronic monitoring; (4) house arrest at the third party

---

[7] *Rieara v. People*, 57 V.I. 659, 667 (V.I. 2012) ("When the court resolves a motion to modify bail and release conditions, it must make an individualized determination in order to ensure that the bail is not excessive"); *People v. Camacho*, 47 V.I. 302 (V.I. Super. Ct. 2005).

[8] *Rieara*, 57 V.I. at 668.

[9] *People v. Saldana*, Super. Ct. Civ. No. ST-14-CR-187, 2015 V.I. Lexis 1, at *12 (V.I. Super. Ct. Jan. 16, 2015) (citing *Rieara v. People*, 57 V.I. 659 (V.I. 2012).

[10] V.I. R. CRIM. P. 32.1(a)(6).

[11] Super. Ct. Case No. ST-14-CR-187, 2015 V.I. Lexis 1 (V.I. Super. Ct. Jan. 16, 2015).

[12] *Id.* at *22 (emphasis added).

[13] *Id.* at *2.

[14] *Virgin Islands v. Dowdye*, 48 V.I. 45, 52 (Super. Ct. Oct. 12, 2006).

custodian's residence; (5) requiring the defendant to surrender his passport; (6) requiring written Court permission for any travel from St. Thomas or the jurisdiction of the United States Virgin Islands; (7) requiring Court permission for any departure from the third party custodian's residence; and (8) prohibiting the Defendant from having any contact with the surviving victim, his family or any relatives of the deceased, except through his counsel or an investigator hired by his attorney.[15]

¶17    This Court has also routinely imposed the cost of electronic monitoring on defendants and others. In *People v. Rodriguez*,[16] the Court considered the willingness of a defendant's parents to pay the electronic monitoring fee when granting the defendant's release on electronic monitoring.[17] Conversely, in *People v. Powell*,[18] the Court was skeptical of a third-party custodian's ability to pay the $10/day or $300/month electronic monitoring fee and denied release.[19] In other cases, the Court has ordered the fees be paid by the defendant.[20] Trial courts are recognized as being uniquely situated to make bail and release determinations.[21]

## III.  ANALYSIS

¶18    First, it should be noted that the cases Berthier cites for the proposition that electronic monitoring must be authorized by a statute and that a defendant cannot be forced to pay come from outside this jurisdiction – Connecticut, Massachusetts, Texas, Arizona, and Michigan. Second, Rule 5-1(b)(3) grants the Court the ability to place restrictions on a defendant's travel, association, and place of abode during release. The rule is silent as to what those restrictions are or could be – necessarily so as they will differ in each case. Electronic monitoring is merely a means of carrying out this restriction – akin to ordering a defendant to surrender his passport, not access the internet, or to stay away from schools.

---

[15] *Id.* at 52.

[16] Super. Ct. No. SX-17-CR-145, 2018 V.I. Lexis 5 (V.I. Super. Ct. Jan. 16, 2018).

[17] *Id.* at *12-13 ("Rodriguez's mother is not a suitable third-party custodian on her own because she does not own 139 R36 Whim, Frederiksted, St. Croix and the Court struggles to ascertain how Delores Rodriguez would be able to pay $75 per week for electronic monitoring. Virgilio Rodriguez is suitable to be the third-party custodian because he owns 139 R36 Whim, Frederiksted, St. Croix, he will Rodriguez [sic] to reside there and he is willing to pay the $75 electronic monitoring fee.").

[18] Super. Ct. Case No. ST-2013-SFL-0000005, 2014 V.I. Lexis 17 (V.I. Super. Ct. Mar. 24, 2014).

[19] *Id.* at *6-7 ("When asked how she would pay for electronic monitoring which costs $10/day or $300/month, Joseph answered 'If it has to be done, it has to be done.'").

[20] *See, e.g., People v. Gilkes*, Super. Ct. Crim. No. ST-11-CR-435, 2011 V.I. Lexis 46 (V.I. Super. Ct. Aug. 11, 2011) (ordering defendant to bear the cost of electronic monitoring on house arrest); *People v. Morton*, Super. Ct. Criminal No. ST-11-CR-327, 2011 V.I. Lexis 42 (V.I. Super. Ct. July 28, 2011) (same).

[21] *United States v. Thrower*, 96 Fed. Appx. 343, 343–44 (6th Cir. 2004) ("The trial court is in the best position to make bail and other release determinations in the first instance, and consequently its decisions warrant some deference. For these reasons, we apply an abuse-of-discretion standard.").

¶19    Berthier is correct in pointing out that there is no explicit statute that governs electronic monitoring. However, Rule 5-1 is broadly written. While the rule provides a host of pretrial release conditions, it explicitly states the conditions listed are "non-exhaustive." As there is not another rule or statute which provides a list of pretrial release options, the "non-exhaustive" language plainly recognizes that courts may fashion other conditions for pretrial release not explicitly stated.

¶20    The Court clearly has the power to set bail conditions. The Court is also clearly not limited by Rule 5-1 to only the conditions explicitly listed. Thus, setting electronic monitoring as a condition can be considered an "implied power." "Implied powers are such as are necessary to make available and carry into effect those powers which are expressly granted or conferred, and which must therefore be presumed to have been within the intention of the constitutional or legislative grant."[22] This is strengthened by the fact that appellate and trial courts recognize that the specific conditions of bail release are made on a case-by-case basis with wide latitude given to the discretion of the trial judge.

¶21    All cases not being the same, and technological advances allowing for less restrictive means than incarceration for securing a defendant's appearance, an implied power to fashion bail requirements on a case-by-case basis also furthers the policy goals of bail – reducing the liberty burdens on defendants who are presumed innocent until proven guilty. "[T]he relevant question is not whether electronic monitoring imposes any costs, as implicated by reduced privacy and potential net-widening (which it probably does), but whether these costs are large enough such that physically incarcerating people in jail prior to trial is a better and more justified option."[23] If a defendant finds electronic monitoring and having to pay for it to be overly burdensome and objects, then the Court can always revert to the default – incarceration.

¶22    Further, as demonstrated above, the Superior Court has detained people on electronic monitoring before trial for years in multiple cases. The Court has also required defendants and third parties to pay for electronic monitoring for a similar amount of time. The Supreme Court of the Virgin Islands has not once found this unconstitutional, and the legislature has not banned the practice, despite ample time for either. With no express ban coming from the legislature or the judiciary after such a time, the practice is condoned by implication: *quod semel aut bis existit praetereunt legislatores*.[24]

### C. Berthier's Request To Work Pending Trial.

¶23    Charles also proposes to pick up Berthier and drive Berthier to and from work. The Court further finds that Charles understands the seriousness of the pending charges against Berthier and that he will properly supervise him. However, the Court is concerned that Charles does not keep

---

[22] Mallard, *Inherent Power of the Courts of North Carolina*, 10 WAKE FOREST L. REV. 1, 12 (1974).

[23] Crystal S. Yang, *Toward An Optimal Bail System*, 92 N.Y.U.L. REV. 1399, 1482 (2017).

[24] Legal Maxims, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Legislators pass over what happens (only) once or twice.").

regular hours and also makes road calls which entails driving to where a customer's vehicle is located.

¶24    The Court finds that the electronic monitoring, house arrest on non-workdays, and the appointment of a third-party custodian will reasonably assure the safety of the community and counteract any risk of flight by Berthier if he is permitted to work with Charles. The Court finds that permitting Berthier to work Charles' unscheduled work hours is incompatible with the requirement of electronic monitoring. Therefore, Berthier will be permitted to work with Charles and accompany Charles on road calls during the hours of 7 a.m. to 7 p.m., Monday through Friday.

## IV. CONCLUSION

¶25    The Virgin Islands Supreme Court is authorized by statute to promulgate rules and the Virgin Islands Supreme Court has promulgated rules concerning bail in criminal cases. Rule 5-1 allows the Court to place whatever necessary restrictions it sees fit on a defendant's place of abode, travel, and association. The rule also provides a list of bail conditions the Superior Court may impose but notes that it is not exhaustive. This implies the Court may fashion other conditions as needed for particular circumstances. Thus, electronic monitoring can be considered an implied power of the Court's bail-setting authority. Such a reading also furthers the policy goals of bail – limiting the pretrial incarceration of defendants presumed innocent while also ensuring their appearance before the Court. Lastly, the Court has utilized electronic monitoring for over a decade and neither the Supreme Court of the Virgin Islands nor the legislature has attempted to limit or eliminate the practice.

An Order Modifying Bail Release consistent with this Memorandum Opinion follows:

DATED: 6|4|2021

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:  _____
**LATOYA A. CAMACHO**
Court Clerk Supervisor 06 / 07 /2021